UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BONITA C.-M. o/b/o DEJEAN C., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C22-5677-SKV <br><br> ORDER REVERSING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of her son's application for Disability Insurance Benefits (DIB).[1] Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for a finding of disability under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Claimant was born in 1995 and died in 2021, had an 11th-grade education, and worked as a fast-food cook and cashier, retail stocker, deli worker, and moving company loader. AR 493, 505. Claimant was last gainfully employed in 2017. AR 493.

---

[1] This order uses "Claimant" to refer to the deceased claimant, and "Plaintiff" to refer to Claimant's mother, who filed this action after Claimant's death.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

In February 2018, Claimant applied for benefits, alleging disability as of February 5, 2014, with a date last insured (DLI) of March 31, 2016.[2]  AR 450-51.  Claimant's application was denied initially and on reconsideration, and Claimant requested a hearing.  AR 149-59, 176-86, 198-99.  After ALJs conducted hearings in 2019, 2020, and 2021 (AR 50-81, 1773-1870), an ALJ issued a decision finding Claimant not disabled.  AR 22-40.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one**:  Claimant did not engage in substantial gainful activity after the alleged onset date.

**First step of drug addiction and alcoholism (DAA) analysis**:

**Step two**:  Claimant had the following severe impairments: cannabis use disorder, methamphetamine use disorder, and schizophrenia.

**Step three**:  If Claimant's substance use is included, his impairments met the requirements of Listing 12.03 and he was disabled.[4]

**Second step of DAA analysis**:

**Step two**:  If Claimant had stopped using substances, he would have continued to have a severe impairment or combination of impairments.

**Step three**:  If Claimant had stopped using substances, he would not have had an impairment or combination of impairments that met or equaled a listing.

**Residual Functional Capacity (RFC)**:  If Claimant had stopped using substances, he could have performed a full range of work at all exertional levels, but with the following non-exertional limitations: Claimant could not be exposed to "hazards" (as defined in the Dictionary of Occupational Titles).  He was limited to simple, routine, repetitive tasks in a work environment free from fast-paced production requirements involving only simple work-related decisions with few, if any workplace hazards.  He could have no contact with the public, but could have occasional superficial contact with co-workers.  He could not perform team tasks.

---

[2] Claimant also applied for supplemental security income, but as a result of his death Plaintiff is pursuing DIB only.  *See* Dkt. 4 at 2-3.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P, App. 1.

**Step four**:  Claimant could not perform past relevant work.

**Step five**:  If Claimant had stopped using substances, there were jobs that exist in significant numbers in the national economy that he could have performed.

**Materiality**: Claimant's substance use is a contributing factor material to the determination of disability because he would not have been disabled if he had stopped the substance use.  Because his substance use was material, he was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision.

AR 22-40.[5]

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to determine whether the error alters the outcome of the case."  *Id*.

Substantial evidence is "more than a mere scintilla.  It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

---

[5] Claimant's prior applications for benefits were denied in administratively final decisions on January 5, 2016, and the ALJ declined to reopen those applications.  *See* AR 23.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred in finding Claimant not disabled because his substance use was a contributing factor material to the determination of disability. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

An individual is not considered to be disabled if DAA would be a contributing factor material to a determination of disability. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Implementing regulations governing the consideration of DAA state: "If we find that you are disabled and have medical evidence of your [DAA], we must determine whether your [DAA] is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). The "key factor" in this determination is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. *Id*. at §§ 404.1535(b)(1), 416.935(b)(1). The regulations further state that, in making such a determination, "we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling." *Id*. at §§ 404.1535(b)(2), 416.935(b)(2). DAA is deemed material if the remaining limitations would not be disabling, and

not material if those limitations would be disabling. *Id*. As with each of the first four steps of the disability evaluation process, the claimant bears the burden of showing that his or her DAA is not a contributing factor material to his or her disability. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007); *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

As discussed above, the ALJ found that Claimant met Listing 12.03 (schizophrenia spectrum and other psychotic disorders) when his substance use is accounted for, but that when he remained sober and complied with treatment, his functioning improved and he no longer satisfied either the "paragraph B" or "paragraph C" criteria for that listing. AR 27-33. Listing 12.03 has three paragraphs (A, B, and C) of criteria, and in order to meet the listing, a claimant must satisfy either paragraphs A and B, or paragraphs A and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2). The ALJ did not dispute that Claimant satisfies the diagnostic criteria of paragraph A. *See* AR 27, 31-33. In order to satisfy the paragraph B criteria for Listing 12.03, a claimant must have at least one extreme limitation, or two marked limitations, in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining page; and adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03(B). In order to satisfy the paragraph C criteria for Listing 12.03, a claimant must show a medically documented history of an impairment of at least two years; treatment, psychosocial support, and highly structured settings that are ongoing and diminishes symptoms; and (3) minimal ability to adapt to change. *Id*. at § 12.03(C).

Plaintiff disagrees with the ALJ as to whether Claimant's functioning improved when he was sober, arguing that the ALJ's finding of improvement as to the "paragraph B" criteria is not supported by the evidence the ALJ cited, because that evidence shows that Claimant did not experience sustained improvement at any point, even when sober, and the ALJ misconstrued the

record to find that Plaintiff was using substances at times when he was not. Dkt. 22 at 7-16. The Commissioner contends that the ALJ's finding that Plaintiff's functioning improved when he was sober and medication compliant is supported both by the ALJ's citations and the record as a whole. Dkt. 27 at 2.

In support of her finding that Plaintiff's functioning improved when he was sober and medication compliant, the ALJ cited certain treatment notes that "confirm generally intact attention, concentration, and memory without signs of serious cognitive deficits[,]" no psychotic symptoms, generally normal thought processes and mood, and normal appearance. AR 33.[6]

Plaintiff contends that the ALJ cherry-picked treatment notes with generally normal findings from a record that contains a wealth of evidence of abnormal findings even during periods of sustained sobriety. Dkt. 22 at 11. But in order to apply the DAA two-step analysis, the ALJ was *required* to isolate treatment notes that reflect Claimant's functioning while sober, which requires some degree of selectivity, particularly in a record that contains scant evidence of confirmed sobriety. The DAA two-step process applicable here requires the ALJ to separate out evidence pertaining to whether the claimant's functioning improved when not using substances,

---

[6] Citing AR 1139-40 (October 2017 note documenting normal findings, Claimant reports he has not used meth in the past week), 1146-47 (September 2017 note documenting normal findings, Claimant reports he has not used meth in the past week), 1159-60 (November 2017 note documenting normal findings, Claimant reports he has not used meth in the past week), 1271-72 (December 2018 generally normal mental status examination findings, Claimant states he has not used meth in more than 90 days), 1319 (January 2019 note documenting improved cognition when sober and medication complaint; Claimant requests an increase in one medication for concentration), 1382-1400 (January-May 2019 substance use group therapy notes; on February 15, 2019, Claimant reports last using meth on February 4), 1477 (May 2020 note silent on sobriety; Claimant reports "significant decrease in psychosis in response to his current meds which he is tolerating well[,]" but still experiences "occasional" visual hallucinations), 1480-81 (June 2020 silent on sobriety; Claimant denies any psychotic symptoms or any other complaints), 1483 (July 2020 silent on sobriety; Claimant denies any psychotic symptoms and says medications are working), 1619 (October 2018 normal mental findings during inpatient drug treatment), 1630-31 (September 2018 no psychotic symptoms during inpatient drug treatment).

and Plaintiff has not shown that the ALJ focused on only an unrepresentative portion of that evidence in this case.

Although Plaintiff directs the Court's attention to other evidence that she contends shows that Claimant did not improve when sober (Dkt. 22 at 11-15), the evidence that she cites does not establish error in the ALJ's assessment of the evidence. Plaintiff points to therapy notes from 2020 that reference various abnormal findings (AR 1421, 1423-24, 1426-27, 1430, 1433, 1436, 1465, 1468, 1465, 1474, 1480, 1483, 1699, 1701, 1706, 1708, 1717, 1720, 1722), but some of these treatment notes also indicate that Claimant was not compliant with his medication regimen at the time and/or Plaintiff told provider she wondered whether Claimant was using substances again. *See* AR 1422-23, 1425-26, 1706, 1708, 1722. Other treatment notes indicate that Claimant reported improvement with medication compliance. *See* AR 1433-34, 1468, 1474, 1483, 1701, 1717. Some treatment notes reflect Claimant's need for a medication adjustment. *See* AR 1465, 1480, 1699-1700, 1720-22.

To the extent that Plaintiff cites certain abnormal mental status findings (Dkt. 22 at 11-12), this evidence does not undermine the ALJ's decision because the ALJ did not find that Claimant ever improved to the point that he had *no* mental limitations, even when sober and compliant with medications. The ALJ acknowledged that Claimant continued to have moderate limitations in all of the "paragraph B" criteria even when sober (AR 31-32), and acknowledged that Claimant continued to present "during periods of reported sobriety [with] some positive objective signs indicative of functional limitations." *See* AR 36. For all of these reasons, Plaintiff has not shown that the ALJ's finding that his functioning as to the "paragraph B" criteria improved when sober lacks the support of substantial evidence in the record.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

Furthermore, Plaintiff has not shown that the ALJ erred in assessing the testimony from medical expert Paul Wiese, Ph.D., on this point.  Dr. Wiese testified that it was difficult to determine Claimant's maximum functional capacity when sober because it would require 6-12 months of sobriety to restore functionality, and the record did not contain evidence demonstrating that he remained sober for that length of time.  AR 67, 70-73.  Dr. Wiese acknowledged that Claimant's symptoms did improve during brief periods of sobriety, but testified that when he was using substances he would meet the paragraph B criteria.  AR 59-60, 63.

The ALJ found Dr. Wiese's testimony partially persuasive, indicating that his "failure to give a definitive functional assessment without the effects of substances shows that his opinions are of somewhat limited probative value towards the determination of this core finding."  AR 37.  This interpretation of Dr. Wiese's testimony is reasonable and adequately addresses the quality of the medical opinion, which goes to its supportability.[7]  The ALJ was tasked with considering Claimant's functionality with and without substance use, and Dr. Wiese's inability to define Claimant's functionality without substance use rendered his testimony less probative to the ALJ's task.  Plaintiff has not shown error in this line of the ALJ's reasoning with respect to Dr. Wiese's testimony.

But the Court's inquiry does not stop there, because Dr. Wiese also testified that even when Claimant's functioning improved with brief sobriety, he continued to satisfy the paragraph C criteria of Listing 12.03 due to his reliance on external support and his inability to adapt to

---

[7] Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

change. AR 59-60. The ALJ disagreed with this testimony and found it inconsistent with the record. AR 37. The ALJ cited evidence indicating that Claimant was living in his own apartment for the proposition that he was able to live independently, away from family members, managing some of his daily activities on his own. *See id.* (citing AR 1271 (Claimant reports he lives by himself in an apartment), 1328 (Claimant reports he lives in his own apartment and still has daily contact with his mother), 1652 (during inpatient intake, Claimant reports that he lives in his own apartment but could not explain how he pays for it)). Based on the Court's review of the record, the evidence cited by the ALJ does not support the conclusion for which the ALJ cited it, and, moreover, does not represent the record as a whole. The record does indicate that Claimant had his own apartment at times, but unequivocally shows that even when Claimant had his own apartment, he was dependent on Plaintiff and other family members to attend and communicate during treatment sessions, work part-time, comply with his medication regimen, prepare his meals, complete his household chores, and maintain a safe home environment.[8]

---

[8] *See, e.g.*, AR 1247 (Claimant does not attend treatment when Plaintiff is out of town, due to lack of transportation), 1257 (Plaintiff reports Claimant lives in his own apartment, but "his sister is staying with him" at night and Plaintiff stays with him during the day), 1270-71 (Claimant reports that although he has his own apartment, Plaintiff and sister cook for him and take care of his chores, Plaintiff does his shopping, Plaintiff helps him manage his finances, Plaintiff reminds him to go to appointments, Plaintiff reminds him to bathe (but he sometimes remembers on his own); "[Claimant's] life is limited because there are a lot of things he doesn't know how to do by himself. Mom does a lot for him.")), 1312 (Plaintiff calling potential employers to pursue jobs for Claimant), 1316 (Claimant's sister is living with him as a paid caregiver), 1319 (same), 1322 (Claimant discharged from inpatient treatment to Plaintiff's home), 1328 (Claimant has his own apartment, but has daily contact with Plaintiff), 1330 (Plaintiff speaks for Claimant during appointment), 1332 (Claimant lost part-time job due to drug use), 1358 (while Claimant was living alone, he flooded his apartment while trying to wash dishes and Plaintiff worries he will be evicted; Plaintiff says Claimant "is so distracted that's why he needs someone to care for him 24/7"), 1364 (Claimant had job interviews and Plaintiff follows up with potential employers), 1422 (Plaintiff is having surgery, so Claimant's two sisters will be going to his apartment to take care of him while Plaintiff is recovering), 1423 ("[Claimant] is receptive to intervention, however is challenged to stay engaged on his own without mother's assistance."), 1425 (Claimant living on his own and not sure if he is complying with his medications, will be moving back in with his mom), 1434 (Claimant preferred to have Plaintiff speak on his behalf during therapy appointment; Plaintiff reports that Claimant wants to go outside but she is keeping him inside due to COVID-19 lockdown), 1437 (Claimant reports Plaintiff is

Although the Commissioner contends that the record does not indicate that Claimant received a level of support from his family members that would satisfy the "paragraph C" criteria (Dkt. 27 at 16-17), the Commissioner's argument is not persuasive in light of the evidence cited *supra*, which is representative of the record but by no means exhaustive. The record amply indicates that Claimant received, throughout the entire period at issue, the type of family support suggesting that he relied upon substantial psychosocial supports to reduce symptoms and adapt

---

looking for jobs for him to apply to), 1443 (Claimant required support from Plaintiff to be able to tolerate an entire therapy session), 1444 (Plaintiff reports Claimant no longer has a paid caregiver, so she was going to take on the caregiving: "I'm doing my best to keep an eye on him and help him do all the stuff around his apartment."), 1450 (Plaintiff reports frustration with therapist that therapist is not helping Claimant with depression; therapist reports that Claimant denies depression and cuts therapy sessions short. Plaintiff responds: "That's going to stop. I'm going to be there from now on to make sure he stays for the full hour."), 1452 (Claimant reports Plaintiff helps him "with majority of his household chores"), 1468 (Plaintiff reports Claimant "is sleeping better and a number of his stressors have been eliminated and that she supervises his meds"), 1483 (Plaintiff agrees with clinician that she will monitor Claimant's mood and identify depression triggers), 1621 (Plaintiff reports that she "resorted to physically locking [Claimant in] the family home to unsuccessfully curtail [substance] use"), 1677 (clinician indicates that Claimant "[d]oes not seek medical or mental health care despite persistent and/or severe symptoms. Others must seek assistance for [him.]"), 1695 (Claimant forgot about food left cooking on stove and started a house fire), 1697 (clinician reports that her "therapy sessions have been related to case management for [Plaintiff] for [Claimant's] challenges in living independently and managing negative symptoms"), 1699 (Plaintiff attends Claimant's therapy appointment on Claimant's behalf and indicates he needs "to move closer to her for better supports"), 1706 (Claimant's part-time fast-food job "has been stressful and too demanding"), 1710 (Claimant got robbed at his apartment; Plaintiff reports that she is "trying to get him to move closer to me so I can have a watch over him"), 1715 (Plaintiff reports she has been "observing [Claimant] a lot and making sure he takes his medication"), 1722 (Plaintiff attends therapy on Claimant's behalf and tells clinician she does not know where he is), 1724-25 (Plaintiff reports she is moving Claimant to a different apartment because he is experiencing increased symptoms, not taking medications, and may be using meth again), 1728 (Plaintiff reports she moved Claimant to an apartment closer to her, but still suspects he is using meth again), 1730 (Plaintiff reports that "moving [Claimant] to a better place away from the people who get him in trouble helps"), 1731 (Claimant reports Plaintiff is going to work with him to help him focus, and his new apartment is "located in a better place for Mother to support his needs"), 1737 (Claimant reports he is "doing better since living close to mom"; "I am taking my medications as my mom gives them to me, she checks I take them"), 1744 (Claimant reports "I like my place near my mom, she comes over and helps me get things done"), 1750 (clinician discusses parenting boundaries with Plaintiff; she reports that "[Claimant] will do it for me, but not for himself.  It's like I have enabled him, but he needs the supports."), 1755 (Plaintiff reports that Claimant "is good when I am here, but I can't always be here and when I am not he is inviting people to live in his apartment"), 1772 (clinician reports that Plaintiff "has been the center of all [Claimant's] session which she is his caregiver currently and looking to relieve that stressor").

ORDER REVERSING THE COMMISSIONER'S
DECISION - 10

to the requirements of daily life, and therefore meets the paragraph C criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(1)(a) ("You receive help from family members or other people who monitor your daily activities and help you to function. For example, family members administer your medications, remind you to eat, shop for you and pay your bills, or change their work hours so you are never home alone."). By focusing only on the fact that Claimant had a separate apartment at times during the relevant period and could sporadically work part-time, without considering the extraordinary degree of support he required from his family members to be able to manage those limited circumstances, the ALJ improperly cherry-picked evidence without accounting for its context. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (providing that the court "may not affirm simply by isolating a specific quantum of supporting evidence[,]" but must review the record as a whole). The ALJ therefore erred in finding that Dr. Wiese's testimony as to the paragraph C criteria was unpersuasive because it was inconsistent with the record.

Because the ALJ improperly discounted Dr. Wiese's testimony that Claimant met the "paragraph C" criteria of Listing 12.03 throughout the relevant period, and the record unequivocally demonstrates that Claimant indeed met the "paragraph C" criteria of Listing 12.03 throughout the relevant period, the Court turns to consider whether this error should be remedied by a remand for further proceedings or for a finding of disability.

Before remanding a case for a finding of disability, three requirements must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must conclude "'the record has been fully developed and further administrative

proceedings would serve no useful purpose.'" *Id*. In so doing, the Court considers the existence of "'outstanding issues'" that must be resolved before a disability determination can be made. *Id*. (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014)). Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id*. (quoting *Garrison*, 759 F.3d at 1021).

As discussed *supra*, the Court finds that the ALJ improperly rejected Dr. Wiese's testimony that Claimant met paragraphs A and C of Listing 12.03 (thereby satisfying the Listing) throughout the relevant period, and thus the first remand criterion has been satisfied. As to the second criterion, the Commissioner suggests that even if Dr. Wiese's testimony is credited, a remand for proceedings would serve the useful purpose of determining "the timing and duration of . . . disability." Dkt. 27 at 20 (quoting *Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003)). The Commissioner's argument may be persuasive if the Court had found error as to the ALJ's assessment of the "paragraph B" criteria or the RFC assessment, but Dr. Wiese testified that there is no point during the period at issue where Claimant did not continue to satisfy the paragraph C criteria of Listing 12.03. *See* AR 60. Because the record unequivocally supports that part of Dr. Wiese's testimony, and that part of the testimony would compel a finding of disability if credited, there are no timing or duration questions that require resolution on remand. For these reasons, the Court exercises its discretion to remand this case for a finding of disability.

//
//
//
//

ORDER REVERSING THE COMMISSIONER'S
DECISION - 12

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for a finding of disability under sentence four of 42 U.S.C. § 405(g).

Dated this 20th day of April, 2023.

*S. Kate Vaughan*

S. KATE VAUGHAN
United States Magistrate Judge